IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COREY HARRELL,                          :
                                        :
          Petitioner,                   :
                                        :
     v.                                 :   Civil Action No. 18-430-RGA
                                        :
ROBERT MAY, Warden, and                 :
ATTORNEY GENERAL OF THE                 :
STATE OF DELAWARE,                      :
                                        :
          Respondents.[1]               :

# MEMORANDUM OPINION

Corey Harrell.  *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

March 2, 2021
Wilmington, Delaware

---

[1] Warden Robert May has replaced former Warden G.R. Johnson, an original party to the case. *See* Fed. R. Civ. P. 25(d).

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Corey Harrell's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 1)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 9; D.I. 12)  For the reasons discussed, the Court will dismiss the Petition.

**I.      BACKGROUND**

> [Petitioner] fought with 17–year–old Darby Ford over a cell phone that was used to transact drug sales.  [Petitioner] lost the fight and the phone.  The next day, in an attempt to regain the phone, an armed [Petitioner] lured Ford to an apartment complex under the guise of a drug transaction.  Once there, [Petitioner] shot Ford twice.  Ford was killed.  [Petitioner] took the cell phone and fled the crime scene.  Three months later, [Petitioner] was found hiding out in Philadelphia.

*State v. Harrell*, 2017 WL 2418278, at *1 (Del. Super. Ct. June 5, 2017), *aff'd*, 183 A.3d 715 (Del. 2018).  In March 2014, Petitioner was indicted on charges of first degree murder and possession of a firearm during the commission of a felony ("PFDCF").  (D.I. 9 at 1) On March 13, 2015, Petitioner pled guilty to second degree murder (as a lesser-included offense of first degree murder) and PFDCF.  (D.I. 10-5 at 20-28)  The Superior Court sentenced Petitioner on August 21, 2015 as follows: (1) for his second degree murder conviction, to forty years at Level V incarceration, suspended after thirty years for decreasing levels of supervision; and (2) for his PFDCF conviction, to four years at Level V incarceration.  (D.I. 10-5 at 29-34)  Petitioner did not file a direct appeal.

Petitioner filed a motion to reduce sentence on October 21, 2015, which the Superior Court denied on December 17, 2015.  (D.I. 10-8; D.I. 10-10)

In August 2016, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. (D.I. 10-13) The Superior Court denied the Rule 61 motion in June 2017. *See State v. Harrell,* 2017 WL 2418278, at *4 (Del. Super. Ct. June 5, 2017). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment in March 2018. *See Harrell v. State*, 183 A.3d 715 (Table), 2018 WL 1357452 (Del. Mar. 15, 2018).

## II.   STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

**III.   DISCUSSION**

Petitioner timely filed his § 2254 Petition, which asserts the following three claims: (1) defense counsel provided ineffective assistance by failing to adequately investigate the credibility of an eyewitness who placed Petitioner at the scene of the crime; (2) defense counsel provided ineffective assistance by stipulating to a protective order regarding discovery; and (3) defense counsel should have objected to the State's motion for a protective order. (D.I. 1)

Petitioner presented all three arguments to the Superior Court in his Rule 61 motion. The Superior Court denied the arguments as meritless, and the Delaware Supreme court affirmed that decision "on the basis of the [Superior Court]'s well-reasoned decision of June 5, 2017." *Harrell*, 2018 WL 1357452, at *1. Consequently, Petitioner will only be entitled to habeas relief if the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first

3

*Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir.

4

2013). In this case, the Superior Court's decision was not contrary to clearly established federal law because it correctly identified the *Strickland/Hill* standard applicable to all three of Petitioner's Claims. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Superior Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[2] *See Harrington v. Richter*, 562 U.S. 86, 105 2011). Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. at 112. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101.

---

[2]As explained by the *Richter* Court,
> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

5

### A. Claim One: Failure to Investigate Witness

In Claim One, Petitioner asserts that defense counsel "failed to investigate favorable evidence that could have been used to impeach the credibility of an eyewitness [Jason Cherwaty] placing Petitioner at the scene of the crime." (D.I. 1 at 5; D.I. 12 at 3) In his Rule 61 proceeding, Petitioner presented Claim One as part of a more generalized argument that defense counsel failed to investigate other witnesses who could have committed the crime or had provided inconsistent statements to police identifying Petitioner as the perpetrator. (D.I. 10-13 at 13, 21) Petitioner provided a list of potential witnesses he believed defense counsel did not properly investigate. The list included Cherwaty, whom Petitioner asserted was the only person to place him at the murder scene. (D.I. 10-2 at 9-10; D.I. 10-13 at 13-18) The Superior Court denied as meritless Petitioner's overall argument concerning defense counsel's alleged failure to investigate and explore potential defenses as contradicted by the record, opining:

> [C]ontrary to [Petitioner's] contentions, the record demonstrates that [defense counsel] met with [Petitioner] regularly pre-trial, engaged in multiple discussions of the evidence with him, and reviewed with him numerous potential defenses. While defense counsel has a general duty to investigate, he need not travel blind alleys in hope they might lead to something helpful to his client's case. Together, [Petitioner] and [defense counsel] considered and ruled out alibi, another shooter, self-defense, mental health defenses, accident, lesser-offenses, and a general reasonable doubt defense. But [defense counsel] went further and discussed various of these defenses with [Petitioner's] family members and identified why they were unlikely to be successful if presented at trial. Contrary to [Petitioner's] belief, [defense counsel] found that the protective order did not hinder his trial preparation or communication with his client; in fact, it allowed him the benefit of access to witness statements he would not have otherwise received until far later. During his plea colloquy, [Petitioner] stated that he had adequate time to talk to [defense counsel] about the evidence in his case, the

6

>>defenses he may have to his crimes, and that he was satisfied with [defense counsel's] representation. Moreover, he believed [defense counsel] did all he could do for him in relation to the charges he was facing. There being no contrary evidence, [Petitioner] fails to show [defense counsel's] investigation of the case and potential defenses fell below an objective standard of reasonableness. Lastly, for a claim of ineffective assistance of counsel to prevail, the defendant must make concrete allegations of actual prejudice and substantiate them. There is also no showing that but for [defense counsel's] alleged "failure to investigate," [Petitioner] would have insisted on proceeding to trial.

*Harrell*, 2017 WL 2418278, at *2. For the following reasons, the Court concludes that the Superior Court's decision did not involve an unreasonable application of *Strickland* and *Hill*.

To begin, the Superior Court's decision was based on a reasonable determination of the facts, as demonstrated by the explanations in defense counsel's Rule 61 affidavit and the representations Petitioner made during his plea colloquy. For instance, according to defense counsel's Rule 61 affidavit, at one of their initial meetings, Petitioner "identified by name or nickname many of the individuals who ended up as potential witnesses in this case." (D.I. 10-5 at 36) Although Petitioner told defense counsel that he was present at the time of the murder, Petitioner refused to provide the name of the killer. Defense counsel explained,

>>In addition to reviewing the evidence, my discussions with [Petitioner] and his father led me to confirm that (a) [Petitioner] was, in fact, engaged in an ongoing verbal and physical conflict with the victim of the homicide, which was violent at times, (b) that there had been an altercation leading up to the homicide wherein [Petitioner's] phone was taken, and (c) that the victim started to use [Petitioner's] phone to advance his own drug sales, and [Petitioner] was unsuccessful in trying to stop him.

(D.I. 10-5 at 37) Given these circumstances, defense counsel concluded that the individuals Petitioner identified as having a potential motive to kill the victim did not "g[i]ve rise to a persuasive defense theory requiring additional investigation" because of "(a) the uncontroverted

7

circumstantial evidence in the case, such as [Petitioner's] motive to kill Mr. Ford and [Petitioner's] presence at the scene when Mr. Ford was killed, and (b) [Petitioner's] disclosure that he was present when someone else killed Mr. Ford, notwithstanding the fact that he either refused or declined to tell [counsel] who it was." (D.I. 10-5 at 39-40)

The Superior Court also appropriately relied on the representations Petitioner made during the plea colloquy. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Petitioner's plea colloquy contains his clear and explicit statements that he had discussed his case with defense counsel, that he was satisfied with his counsel's representation, and that he committed the crimes to which he was pleading guilty. (D.I. 10-5 at 24-27) The Truth–In–Sentencing Guilty Plea Form signed by Petitioner also indicates that he knowingly and voluntarily entered into his plea agreement; he had not been promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he was satisfied with his lawyer's representation. (D.I. 10-5 at 21) In this proceeding, Petitioner has failed to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. Thus, the Court concludes that the Superior Court reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea colloquy.

Significantly, Petitioner has not provided any clear and convincing evidence to rebut the Superior Court's factual determination that defense counsel properly investigated potential witnesses, including Cherwaty. Therefore, after considering defense counsel's Rule 61 affidavit

8

in conjunction with the plea colloquy transcript, the Court concludes that the Superior Court reasonably applied *Strickland* and *Hill* in finding that defense counsel did not perform deficiently in the manner Petitioner asserts.

In addition, Petitioner cannot demonstrate a reasonable probability that he would have gone to trial but for defense counsel's failure to engage in additional investigation of Cherwaty. Petitioner faced a potential sentence of life imprisonment if he was convicted at trial. In exchange for his plea, the State reduced the first degree murder charge to second degree murder and entered a joint sentencing recommendation of "not less than 32 years [at Level V], and no more than 36 years at Level V, combined." (D.I. 10-5 at 20). Given the clear benefit Petitioner derived by pleading guilty, the Court concludes that the Superior Court reasonably applied the *Strickland/Hill* standard in holding that Petitioner failed to demonstrate the prejudice necessary to establish a successful ineffective assistance of counsel claim.

For these reasons, the Court concludes that the Superior Court reasonably applied the *Strickland/Hill* standard in denying the argument in Claim One. Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).

**B. Claims Two and Three: Failure to Challenge Protective Order**

As part of the discovery process in Petitioner's case, the State and defense counsel stipulated to a protective order, which provided, *inter alia*, that (1) defense counsel could not disclose identifying information about witnesses to any person, other than his employees, without court order, and (2) defense counsel could not use witness identifying information provided by the State to contact witnesses without leave of the trial court. (D.I. 13-1 at 14-15) The order did not, however, prevent defense counsel from using witness identifying information

9

that was discovered independent of the State's disclosures. (*Id*.) The order was later amended a month before the scheduled trial date so that defense counsel could provide witness names to Petitioner. (D.I. 9 at 11)

In Claims Two and Three, Petitioner asserts that the protective order prevented defense counsel from investigating the State's witnesses, and, thus it was unreasonable for counsel to have acquiesced to it. In his Rule 61 proceeding, the Superior Court addressed Petitioner's contentions about the protective order as part of Petitioner's overall failure to investigate claim, stating: "Contrary to [Petitioner's] belief, [defense counsel] found that the protective order did not hinder his trial preparation or communication with his client; in fact, it allowed him the benefit of access to witness statements he would not have otherwise received until far later." *Harrell*, 2017 WL 2418278, at *2.

The Court has already concluded that defense counsel did not provide ineffective assistance with respect to his investigation of potential witnesses. The Court reaches the same conclusion concerning Petitioner's specific complaint about the protective order's effect on defense counsel's performance. To begin, the witness names Petitioner provided to defense counsel fell outside the parameters of the protective order, because the order did not prevent defense counsel from using witness identifying information that was discovered independent of the State's disclosures. Additionally, in his Rule 61 affidavit, defense counsel averred that the protective order "never prevented me from performing my duty to zealously represent [Petitioner]; the Protective Order simply precluded me from utilizing information to which I was not otherwise entitled in the first place." (D.I. 10-5 at 41) Defense counsel also explained that the protective order gave him access to "evidence that is not otherwise required to be disclosed in

10

advance of trial." (D.I. 10-5 at 36)  Additionally, defense counsel articulated that he was able to investigate Petitioner's case through discovery, by conversations with Petitioner himself, and with Petitioner's family members.  (*Id*. at 42)  Finally, defense counsel explicitly stated, "My duty to investigate and my ability to investigate were not hampered by a Protective Order." (D.I. 10-5 at 42)

   Petitioner has not provided any clear and convincing evidence to either contradict defense counsel's statements that the protective order did not impede his ability to investigate Petitioner's case, or to rebut the Superior Court's acceptance of defense counsel's statements as credible.  Consequently, the Court accepts the Superior Court's factual determination that the protective order did not impair defense counsel's ability to investigate Petitioner's case.  Considering this determination in conjunction with the Court's previous analysis of Claim One, while also viewing the Superior Court's decision through the doubly deferential lens applicable on habeas review, the Court concludes that the Superior Court reasonably applied the *Strickland/Hill* standard in denying Claims Two and Three.

## IV. CERTIFICATE OF APPEALABILITY

   A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.      CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.